UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

STEVEN PENDERGRASS,

    Plaintiff,

v.

WARDEN CASEY M. CAMPBELL,
WARDEN THOMAS WOLFE and
DEPARTMENT OF PUBLIC SAFETY AND
CORRECTIONAL SERVICES -
MARYLAND,

    Defendants.

Civil Action No. TDC-19-0890

**MEMORANDUM OPINION**

Plaintiff Steven Pendergrass, an inmate currently confined at the Maryland Correctional Training Center ("MCTC") in Hagerstown, Maryland, has filed this civil action against Defendants Warden Casey Campbell, Warden Thomas Wolfe, and the Maryland Department of Public Safety and Correctional Services ("DPSCS") asserting a claim under 42 U.S.C. § 1983 for failure to protect him from a violent attack by another inmate while he was confined at the Brockbridge Correctional Facility ("BCF") in Jessup, Maryland. Pendergrass's claim arises from an assault on July 16, 2018 that resulted in a serious injury to his eye.

Pending before the Court is Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, as well as several motions filed by Pendergrass. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Defendants' Motion will be GRANTED, Pendergrass's Motion to

Remove Warden Campbell will be GRANTED, and Pendergrass's remaining Motions will be DENIED.

## BACKGROUND

On July 16, 2018, Pendergrass, who was designated to the Prince George's Dormitory at BCF, was attacked while he slept and sustained an injury to his eye. That evening, Correctional Officers Olaniyi Ojo and Julius Nyambi were conducting security rounds in the dormitory. At approximately 12:45 a.m., Ojo responded to a banging sound coming from behind the door of the Prince George's Dormitory and found Pendergrass with his face was covered in blood. Ojo entered an emergency code on his radio to summon a response team, and Ojo and Nyambi escorted Pendergrass to the medical unit for evaluation and treatment. A physical body search was conducted of all other inmates inside the dormitory in an effort to recover any weapons that may have been used to assault Pendergrass and to detect any injuries consistent with a fight. Another inmate, Irvin Smith, was found with swelling and bruises to his head and face, but no weapons were found.

At approximately 12:47 a.m., Lt. Charnel Hines, the shift commander, questioned both Pendergrass and Smith in an effort to identify those responsible for the assault. Neither inmate identified his assailant and both denied fighting with each other. Smith submitted a written statement claiming that he sustained his injuries when he was elbowed while playing football and basketball during recreation. Pendergrass refused to provide a written a statement.

Medical staff at BCF determined that Pendergrass needed to be transported to an outside hospital. At approximately 1:25 a.m., Pendergrass was transported to Bon Secours Hospital. Later that morning, Pendergrass was taken to the University of Maryland Medical Center Shock Trauma Unit. The medical care Pendergrass received is not the subject of this lawsuit.

In his Complaint, Pendergrass alleges that Defendant Warden Thomas Wolfe, the Acting Warden of the Maryland Correctional Pre-Release System at the time that Pendergrass was assaulted, failed to provide adequate security at BCF, as there were no security cameras in the Prince George's Dormitory and the distance from that location to the nearest correctional officer's post was too far away to prevent or respond adequately to the assault. Warden Wolfe has stated that he had no independent personal knowledge of the assault. The Acting Facility Administrator for BCF at the time of the incident, Charles Mitchell, confirms that there are no surveillance cameras at BCF in either the dormitories or the hallways and that the nearest correctional officer post is 158 feet from the door of the Prince George's Dormitory. On July 16, 2018, during the 10:00 p.m. to 6:00 a.m. shift, one stationary officer and three roving officers were assigned to patrol the Prince George's Dormitory and five other dormitories at BCF.

## DISCUSSION

### I. Pendergrass's Motions

Pendergrass has filed the following Motions: a Motion for Appointment of Counsel, ECF No. 21; a Motion to Grant Relief, ECF No. 22; a Motion to Remove Warden Campbell, ECF No. 25; a Motion to Add the Attorney General, ECF No. 28; a Motion for Discovery, ECF No. 34; and a Motion for Default, ECF No. 55.

#### A. Motion for Appointment of Counsel

Pendergrass seeks appointment of counsel because his vision is impaired and he believes that his legal mail has been subject to tampering. A federal court may appoint counsel to represent an indigent individual in a civil case. 28 U.S.C. § 1915(e)(1) (2018). There is no absolute right to appointment of counsel in a civil case, and federal courts do so only when there are "exceptional circumstances." *Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987); *Cook v. Bounds*, 518 F.2d

779, 780 (4th Cir. 1975) (stating that counsel should be appointed only in "exceptional cases"). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989). Upon consideration of the motions and previous filings by Pendergrass, the Court finds that he has demonstrated the ability either to articulate the legal and factual basis of his claims himself or to secure meaningful assistance in doing so. Further, as discussed below, the Court finds that his claim is presently subject to dismissal. Accordingly, there are no exceptional circumstances that warrant the appointment of an attorney to represent Pendergrass at this time.

### B. Motions for Default Judgment

In his Motion to Grant Relief, filed on April 3, 2020, Pendergrass seeks a default judgment against Defendants on the grounds that they did not file a timely response to his Complaint. In the Motion for Default, filed on December 2, 2020, Pendergrass seeks default because Defendants did not respond to two non-dispositive motions filed in July 2020.

On February 24, 2020, the Court issued an order grating an extension of the deadline for filing an Answer to March 19, 2020. Standing Orders issued in response to COVID-19 pandemic then extended all filing deadlines by 84 days. *See, e.g.*, Standing Order 2020-07 (D. Md. Apr. 10, 2020), *available at* https://www.mdd.uscourts.gov/sites/mdd/files/2020-07.pdf. Defendants' Answer was thus due on June 11, 2020. Though Defendants' June 25, 2020 filing of their present Motion was untimely, that delay does not warrant entry of default. The United States Court of Appeals for the Fourth Circuit has a "strong policy that cases be decided on their merits." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993). Default judgment is thus appropriate only "when the adversary process has been halted because of an essentially unresponsive party."

4

*S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005); *see H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970) ("[T]he default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights."). Here, Defendants' filing only two weeks after the deadline did not halt the adversarial process. The Court, in its discretion, will thus deny Pendergrass's Motion to Grant Relief. *See United States v. Morad*, 673 F.2d 725, 727 (4th Cir. 1982) ("[T]rial judges are vested with discretion which must be liberally exercised, in entering [default] judgments and in providing relief therefrom."). For similar reasons, and because the failure to file a response to non-dispositive motions would, at most, provide a basis to grant the motions, the Court finds no grounds to grant the Motion for Default.

### C.  Motions to Dismiss or Add Parties

In his Motion to Remove Warden Casey M. Campbell from the Above Title and Case, ECF No. 25, Pendergrass seeks to voluntarily dismiss the claims against Warden Campbell as he now recognizes that Warden Campbell was not associated with BCF at the time of the incident in question. This Motion will be granted, and Warden Campbell will be dismissed as a Defendant.

Pendergrass has also filed a Motion to Add the Attorney General to Above Case, ECF No. 28, in which he seeks to amend the complaint to name Maryland Assistant Attorney General Stephanie Lane-Weber as a Defendant. In the Motion, Pendergrass alleges in a conclusory fashion that Lane-Weber filed the pending Motion with knowledge that certain evidence had been fabricated or subject to tampering. Where a party has, like Pendergrass, previously amended his complaint, the party "may amend its pleading only with the opposing party's written consent or the court's leave," but "[t]he court should freely give leave when justice so requires." Fed. R. Civ.

P. 15(a)(2). Leave to amend, however, may be denied if the amendment is offered in bad faith, is prejudicial to the other party, or would be futile in that the proposed amendment "fails to state a claim" or otherwise "fails to satisfy the requirements of the federal rules." *Katyle v. Penn Nat'l Gaming, Inc.* 637 F.3d 462, 471 (4th Cir. 2011) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 376 (4th Cir. 2008)). Here, the proposed amendment would be futile because Pendergrass has not asserted sufficient facts to support a plausible claim against Lane-Weber. Moreover, as discussed below, any such amendment would not prevent the dismissal of this case based on a failure to exhaust administrative remedies. The Motion will therefore be denied.

### D. Motion for Discovery

Lastly, Pendergrass has filed a Motion for Discovery in which he seeks a copy of the full investigative report on the incident in question. At this point, discovery in this case has not commenced, and, as discussed below, such discovery is not necessary to resolve the pending Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. *See infra* part II. The Motion for Discovery will therefore be denied.

## II. Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment

In their Motion, Defendants assert that this case should be dismissed because Pendergrass has failed to state a claim on which relief may be granted, has failed to allege how Warden Wolfe is liable other than through vicarious liability, and has failed to exhaust administrative remedies. They also argue that they are entitled to qualified immunity. Because this Court finds that Pendergrass failed to exhaust administrative remedies before filing the complaint in this case, it need not address Defendants' remaining arguments.

A.   **Legal Standards**

Defendants have entitled their motion as a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Typically, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded "a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

Here, the notice requirement has been satisfied by the title of Defendants' Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002). Pendergrass has not filed such an affidavit or declaration. Although he has filed a Motion for Discovery in which he seeks the original investigative report, such discovery is not necessary to the resolution of the Motion because this Motion may be resolved on the issue of exhaustion of administrative remedies without consideration of that report. The Court therefore may construe Defendants' Motion as a motion for summary judgment.

7

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

### B. Exhaustion of Administrative Remedies

Defendants assert the affirmative defense that Pendergrass has failed to exhaust his administrative remedies. Under the Prison Litigation Reform Act, 42 U.S.C. § 1197e(a) (2018):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Id.* Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion is mandatory and generally may not be excused unless the administrative procedure is not available. *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (holding that an inmate "must exhaust available remedies, but need not exhaust unavailable ones"). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was

8

prevented from availing himself of it." *Moore v. Bennette,* 517 F.3d 717, 725 (4th Cir. 2008). In *Ross,* the United States Supreme Court identified three circumstances when an administrative remedy is unavailable: when (1) officers are "unable or consistently unwilling to provide relief to aggrieved inmates," (2) the procedure is "so opaque that it becomes, practically speaking, incapable of use," or (3) prison administrators actively "thwart" inmates from filing grievances. *Ross,* 136 S. Ct. at 1859–60.

In Maryland prisons, for the type of grievance asserted by Pendergrass, the Administrative Remedy Procedure is the administrative process that must be exhausted. Md. Code Regs. § 12.02.28.02(B)(1), (D) (2018). First, a prisoner must file an administrative remedy procedure complaint ("ARP") with the warden within 30 days of the incident at issue. Md. Code Regs. § 12.02.28.05(D)(1) (requiring filing with the "managing official"); Md. Code Regs. § 12.02.28.02(B)(14) (defining "managing official" as "the warden or other individual responsible for management of the correctional facility"); Md. Code Regs. § 12.02.28.09(B) (setting the 30-day deadline). Second, if the ARP is denied, or the inmate does not receive a timely response, a prisoner must file an appeal with the Commissioner of Correction within 30 days. Md. Code Regs.§ 12.02.28.14(B)(5). If the appeal is denied, the prisoner must appeal within 30 days to the Inmate Grievance Office. *See* Md. Code. Ann., Corr. Servs. §§ 10-206, 10-210 (LexisNexis 2017); Md. Code Regs. § 12.07.01.05(B). Inmates may seek judicial review of the IGO's final determinations in a Maryland Circuit Court. *See* Md. Code Ann., Corr. Servs. § 10-210(a).

Here, Pendergrass filed his original Complaint on March 25, 2019. He did not file an ARP relating to the July 16, 2018 incident until April 2, 2019, after the filing of his Complaint in this Court. When the ARP was dismissed as untimely, Pendergrass appealed the determination up to the IGO, but the IGO did not make its determination, in which it affirmed the dismissal, until July

9

10, 2019. Thus, Pendergrass neither initiated nor completed the ARP process until after he filed the present civil action. Although Pendergrass claims that he filed an ARP on July 22, 2018 at MCTC, to which he was transferred after the incident, but was not provided a copy, he acknowledges, and the record reflects, that the ARP he filed April 2, 2019 was processed all the way through the IGO appeal. Thus, there is no basis to conclude that any of the exceptions to the exhaustion requirements applies here. *See Ross,* 136 S. Ct. at 1859–60.

Although the United States Court of Appeals for the Fourth Circuit has not decided the issue, the weight of circuit authority establishes that the administrative process must be fully completed before the complaint is filed, and that completing the administrative process while the suit is pending but prior to the entry of judgment does not prevent dismissal for failure to exhaust administrative remedies. *See Neal v. Goord,* 267 F.3d 116, 121-22 (2d Cir. 2001) (overruled on other grounds) (holding that inmates must exhaust before filing suit); *Freeman v. Francis,* 196 F.3d 641, 645 (6th Cir. 1999) (same); *Perez v. Wis. Dep't of Corr.,* 182 F.3d 532, 534-35 (7th Cir. 1999) (same); *see also Kitchen v. Ickes,* 116 F. Supp. 3d 613, 624 (D. Md. 2015) ("Exhausting administrative remedies after a complaint is filed will not prevent a case from being dismissed for failure to exhaust administrative remedies."). *But see Williams v. Norris,* 176 F.3d 1089, 1090 (8th Cir. 1999) (per curiam) (reversing the district court's dismissal because the prisoner's grievance had been denied "at the time the court ruled"). The Court adopts this position because to do otherwise would undermine the exhaustion requirement by discouraging completion of the ARP process before the initiation of a federal court case. Accordingly, particularly where Pendergrass filed suit both before he filed an ARP and before he completed all available appeals up to the IGO, the Court finds that Pendergrass's claims must be dismissed for failure to exhaust administrative remedies. The Motion will therefore be granted.

## CONCLUSION

For the foregoing reasons, Pendergrass's Motion to Remove Warden Casey M. Campbell will be GRANTED, and the claims against Warden Campbell will be DISMISSED WITHOUT PREJUDICE. Pendergrass's remaining Motions will be DENIED. Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment will be GRANTED, and the Complaint will be DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies. A separate Order shall issue.

Date: January 12, 2021

THEODORE D. CHUANG
United States District Judge